1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    BRYAN E. RANSOM,                        No.  2:20-CV-1209-KJM-DMC-P

12                      Plaintiff,

13          v.                                FINDINGS AND RECOMMENDATIONS

14    HERR, et al.,

15                      Defendants.

16

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42

18    U.S.C. § 1983.  Pending before the Court is Defendants' motion to dismiss, ECF No. 20,

19    Plaintiff's opposition, ECF No. 24, and Defendants' reply thereto, ECF No. 27.

20          In considering a motion to dismiss, the Court must accept all allegations of

21    material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

22    Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

23    v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

24    738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

25    ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

26    395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

27    factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

28    In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

                                            1

1    See Haines v. Kerner, 404 U.S. 519, 520 (1972).

2            Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

3    of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

4    notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly,

5    550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

6    to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

7    more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

8    allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56.  The

9    complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id.  at

10   570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

11   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

12   Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but

13   it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting

14   Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

15   defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

16   to relief." Id. (quoting Twombly, 550 U.S. at 557).

17           In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

18   outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

19   Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

20   documents whose contents are alleged in or attached to the complaint and whose authenticity no

21   party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

22   and upon which the complaint necessarily relies, but which are not attached to the complaint, see

23   Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

24   of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

25   1994).

26           Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

27   amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

28   curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

2

1  **I.  PLAINTIFF'S ALLEGATIONS**

2  This action proceeds on Plaintiff's first amended complaint.  See ECF No. 11.

3  Plaintiff names the following as defendants: (1) Herr, a Correctional Officer at California State

4  Prison – Solano (CSP-Sol.); (2) Lore, a Correctional Officer at CSP-Sol.; (3) G. Alvarez, the

5  Assistant Food Manager at CSP-Sol.; (4) A. Petty; (5) C. Pangelian; (6) D. Marchal; and (7) C.

6  Cagnina. See id. at 1, 3.

7  Plaintiff alleges he has been receiving Kosher meals consistent with his Jewish

8  faith and pursuant to California prison regulations. See id. at 4. According to Plaintiff,

9  participants in the Kosher meal program sign a "contract agreement" whereby inmates agree to

10  only accept the provided Kosher meals and not the regular meals provided for prisoners not

11  participating in the Kosher meal program. See id.

12  Plaintiff states that "violators" of this agreement are subject to removal from the

13  Kosher meal program "without any exceptions." Id.  Plaintiff states that all participants in the

14  Kosher meal program are issued a "Religious Diet Card" with their name and photograph on it for

15  proof of participation. Id. at 5.  Plaintiff states that participants in the Kosher meal program at

16  CSP-Sol. are required to pick up their breakfast and lunch by 5:30 a.m. and their dinner by 3:00

17  p.m. See id.  According to Plaintiff, his work schedule, which runs Mondays through Thursdays,

18  did not allow him to pick up his Kosher dinner by 3:00 p.m., so he was permitted to pick up his

19  dinner during the "regular chow release" after 5:00 p.m. See id.

20  Plaintiff alleges that, on February 12, 2020, at about 5:30 a.m., Plaintiff went to

21  pick up his Kosher breakfast and lunch. See id. Plaintiff contends that the C-Facility dining room

22  officer, Defendant Herr, refused to issue him his Kosher meals because Plaintiff's name was no

23  longer on the "Inmate Meal Tracking System (IMTS) 'Kitchen List.'" Id. at 5-6. According to

24  Plaintiff, he showed Defendant Herr his Religious Diet Card authorizing Kosher meals and asked

25  Defendant Herr to re-check the list. See id. at 6. Plaintiff states that this request was "to no avail"

26  and that Defendant Herr refused to feed Plaintiff breakfast or lunch. Id. Plaintiff states that he was

27  "at a loss as to what to do" because the contract agreement for Kosher meals "made no exception

28  or provision for such a situation." Id. As a result, Plaintiff states he went without breakfast or

3

1    lunch. See id.

2         According to Plaintiff, later that same day he went to the C-Facility dining room to

3    pick up his Kosher dinner. See id. Plaintiff contends that an unidentified John Doe defendant

4    refused to issue Plaintiff his Kosher dinner, stating that Plaintiff's name was no longer on his

5    Kitchen List. Id. As with Defendant Herr, Plaintiff states he showed this unidentified John Doe

6    defendant his Religious Diet Card but that he was nonetheless refused his Kosher dinner. See id.

7    Again, Plaintiff states that he went without his evening meal, hoping the situation would

8    eventually work itself out. See id. at 7.

9         Plaintiff claims that, with the exception of February 20, 2020, he was refused

10   Kosher meals by Defendants Herr, Lore and unidentified John/Jane Does 1 through 6. See id.

11   Each time, Plaintiff was informed his name was no longer on the Kitchen List. See id. According

12   to Plaintiff, he showed his Religious Diet Card each time to no avail. See id. Despite showing his

13   card, Plaintiff was refused his meals. See id. Plaintiff states that, on February 27, 2020, "it was

14   revealed that Plaintiff's name had been on the IMTS Kitchen List all along." Id. at 7-8.

15        Plaintiff states that, on February 21, 2020, he submitted an emergency inmate

16   appeal complaining that he had not been provided a total of 23 meals over the preceding nine

17   days. See id. at 9. According to Plaintiff, Defendants Petty, Pangelian, Marchal, and Cagnina

18   received and reviewed his appeal but refused to treat it as an emergency and instead set the matter

19   for a hearing on April 7, 2020. See id. at 9-10. Plaintiff claims this action allowed for the

20   protracted continuation of the denial of religious meals "and starvation." Id. at 10.

21        Plaintiff states that, on February 21, 2020, he submitted a staff misconduct

22   complaint regarding the protracted denial of meals. See id. at 11. Plaintiff claims that, on

23   February 24, 2020, Defendants Cagnina and unidentified John/Jane Does 7 through 9 "took it

24   upon themselves to deliberately and nefariously mis-categorize Plaintiff's 'Staff Misconduct

25   Complaint' as a Category 9 'Living Condition Complaint.'" Id. at 12-13. Plaintiff alleges this was

26   done in order to "foster a code of silence" and circumvent Plaintiff's rights to a separate staff

27   misconduct investigation under California prison regulations. See id. at 13.

28   / / /

1    Plaintiff contends that, on February 26, 2020, he went to the C-Facility dining hall

2  for his daily Kosher breakfast and lunch. See id. at 13-14. Upon arrival, the Assistant Correctional

3  Food Manager, Defendant Alvarez, was waiting to interview Plaintiff regarding his pending

4  inmate grievances alleging that prison officials were withholding his Kosher meals. See id. at 14.

5  According to Plaintiff, Defendant Alvarez told Plaintiff she had reviewed Plaintiff's appeal issues

6  and found that Plaintiff had not been receiving his Kosher meals because medical staff had placed

7  Plaintiff on a new "renal diet" which overrode his Kosher diet. Id. Alvarez told Plaintiff he should

8  have been receiving his meals from the medical facility for the last 16 to 17 days. See id.

9    Plaintiff states he was told by Alvarez that she had done all she could, and that

10  Plaintiff should withdraw his grievances and submit a medical grievance against the "Medical

11  Dietician." Id. Plaintiff states he told Alvarez he would not withdraw his appeals. See id. at 15.

12  According to Plaintiff, this was all a ruse as he went to the medical facility to request meals and

13  was told by Correctional Officer McCullen that she had no recollection of Plaintiff ever being

14  placed on a "renal diet." Id. According to Plaintiff, McCullen called the dietician to confirm and

15  was told by the dietician that there is not nor has there ever been an order for Plaintiff to receive a

16  "renal diet." Id. at 15-16.

17    Plaintiff states that he ultimately went without meals that day because he had to

18  report for his work assignment. See id. at 16. According to Plaintiff, later that evening he went to

19  the C-Facility dining hall and presented his diet card to receive his Kosher dinner. See id. Plaintiff

20  states that, once again, he was refused his meal by an unidentified John/Jane Doe defendant, who

21  told him that his name was not on the Kitchen List. See id. Plaintiff contends that he went to the

22  dining hall on February 27, 2020, at 5:30 a.m. to receive his Kosher breakfast and lunch. See id.

23    Plaintiff states that, once again, Defendant Alvarez was waiting and told Plaintiff

24  that she had mistaken Plaintiff for another prisoner who had been removed from the Kosher meal

25  program and placed on a renal diet. See id. According to Plaintiff, he was told by Alvarez this

26  time that the reason Plaintiff's name had not been showing up on the IMST Kitchen List for the

27  last 17 days was because Plaintiff name had been moved from page 2 to page 1 of the Kitchen

28  List and that the kitchen cook had only been providing custody staff with page 2 of the Kitchen

5

1    List. See id. at 17.

2         The Court ordered that service of the first amended complaint was appropriate

3    against all named defendants on Plaintiff's claim related to denial of Kosher meals. See ECF No.

4    12.

5

6                              **II.  DISCUSSION**

7         In their motion to dismiss, Defendants argue:

8         1.    Plaintiff's claims against Defendants Herr and Lore should be
               dismissed because Plaintiff admits that they were not the cause of his
9              lack of Kosher meals.

10        2.    Plaintiff's claims against all defendants should be dismissed because
               Plaintiff alleges deprivation of Kosher meals for only one or two days.
11

12        3.    Plaintiff's claims against Defendant Petty, Pangelian, Marchal, and
               Cagnina should be dismissed because they were only involved in
13             Plaintiff's innate appeal and did not participate in the denial of
               Kosher meals.

14        4.    Plaintiff's claims for damages against defendants acting in their
               official capacities are barred by the Eleventh Amendment.
15

16        5.    Plaintiff cannot proceed under RLUIPA on any money damages
               claim, whether against defendants in their official or individual
17             capacities, and any claims for injunctive relief which may proceed
               under RLUIPA are moot.

18        6.    Defendants are entitled to qualified immunity on Plaintiff's First
               Amendment claims.
19

20        7.    Plaintiff's negligence claim should be dismissed because Plaintiff failed
               to comply with the California Government Claims Act prior to filing
21             suit and because Plaintiff fails to allege sufficient facts to state a
               negligence claim against any defendant.

22        See ECF No. 20.

23    A.    **Eleventh Amendment Immunity**

24        Defendants contend that Plaintiff's damages claims against them acting in their

25    official capacities are barred. See ECF No. 20, 19-20. The Court agrees. The Eleventh

26    Amendment bars actions seeking damages from state officials acting in their official capacities.

27    See Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995); Pena v. Gardner, 976 F.2d 469, 472

28    (9th Cir. 1992) (per curiam). Plaintiff's official-capacity claims should be dismissed. Plaintiff

1    may proceed with his damages claims against Defendants in their individual capacities, except

2    under RLUIPA, as explained below.

3              **B.    First Amendment and RLUIPA Claims**

4              The United States Supreme Court has held that prisoners retain their First

5    Amendment rights, including the right to free exercise of religion.  See O'Lone v. Estate of

6    Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974).  Thus,

7    for example, prisoners have a right to be provided with food sufficient to sustain them in good

8    health and which satisfies the dietary laws of their religion.  See McElyea v. Babbit, 833 F.2d

9    196, 198 (9th Cir. 1987).  In addition, prison officials are required to provide prisoners facilities

10   where they can worship and access to clergy or spiritual leaders.  See Glittlemacker v. Prasse, 428

11   F.2d 1, 4 (3rd Cir. 1970). Inmates also must be given a "reasonable opportunity" to pursue their

12   faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts.

13   See Cruz v. Beto, 405 U.S. 319, 322 (1972).

14             However, the court has also recognized that limitations on a prisoner's free

15   exercise rights arise from both the fact of incarceration and valid penological objectives.  See

16   McElyea, 833 F.2d at 197.  For instance, under the First Amendment, the penological interest in a

17   simplified food service has been held sufficient to allow a prison to provide orthodox Jewish

18   inmates with a pork-free diet instead of a completely kosher diet.  See Ward v. Walsh, 1 F.3d 873,

19   877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in getting

20   inmates to their work and educational assignments.  See Mayweathers v. Newland, 258 F.3d 930,

21   38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

22             While free exercise of religion claims originally arose under the First Amendment,

23   Congress has enacted various statutes in an effort to provide prisoners with heightened religious

24   protection.  See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005).  Prior to these

25   congressional efforts, prison free exercise claims were analyzed under the "reasonableness test"

26   set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349.  The

27   first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA)

28   of 1993.  However, the Supreme Court invalidated that act and restored the "reasonableness test."

1    See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d

2    732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of

3    Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free

4    exercise challenges brought by prison inmates).

5            Congress then enacted the Religious Land Use and Institutionalized Persons Act

6    (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of

7    Boerne." Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir.

8    2006). Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on

9    religious exercise unless there exists a compelling governmental interest and the burden is the

10   least restrictive means of satisfying that interest. See id. at 986. RLUIPA has been upheld by the

11   Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible

12   with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates

13   exceptional government-created burdens on private religious exercise.'" Warsoldier, 418 F.3d at

14   994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)). Congress achieved this goal by

15   replacing the "reasonableness test" articulated in Turner with the "compelling government

16   interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a). See id.

17           It is not clear whether a prisoner must specifically raise RLUIPA in order to have

18   his claim analyzed under the statute's heightened standard. In Alvarez v. Hill, the Ninth Circuit

19   held that, if a complaint contains "factual allegations establishing a 'plausible' entitlement to

20   relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8

21   of the Federal Rules of Civil Procedure." 518 F.3d 1152, 1157 (9th Cir. 2008); but see

22   Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion

23   about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the

24   First Amendment only). Therefore, it is possible for a prisoner's complaint to raise both a First

25   Amendment claim and RLUIPA claim based on the same factual allegations. In other words,

26   even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may

27   nonetheless be entitled to them. Under Henderson, however, the plaintiff's claim may be limited

28   to the less stringent Turner "reasonableness test" if the plaintiff specifically brings the claim

8

1    under the First Amendment only.

2            Under both the First Amendment and RLUIPA, the prisoner bears the initial

3    burden of establishing that the defendants substantially burdened the practice of his religion by

4    preventing him from engaging in conduct mandated by his faith.  See Freeman v. Arpaio,125 F.3d

5    732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d

6    at 994-95 (analyzing claim under RLUIPA).  While RLUIPA does not define what constitutes a

7    "substantial burden," pre-RLUIPA cases are instructive.  See id. at 995 (discussing cases defining

8    "substantial burden" in the First Amendment context).  To show a substantial burden on the

9    practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the

10   adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by

11   the religion or by preventing him or her from engaging in conduct or having a religious

12   experience which the faith mandates."  Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir.

13   1987).  The burden must be more than a mere inconvenience.  See id. at 851.  In the context of

14   claims based on religious diets, a plaintiff must prove that prison officials refused to provide a

15   diet which satisfies his religious dietary laws or that the available prison menu prevented him

16   from adhering to the religious dietary laws mandated by his faith.  See Bryant v. Gomez, 46 F.3d

17   948, 949 (9th Cir. 1995).

18           Under the First Amendment "reasonableness test," where the inmate shows a

19   substantial burden the prison regulation or restriction at issue is nonetheless valid if it is

20   reasonably related to a legitimate penological interest.  See Shakur v. Schriro, 514 F.3d 878, 884

21   (9th Cir. 2008) (citing Turner, 482 U.S. at 89).  In applying this test, the court must weight four

22   factors:  (1) whether there is a rational connection between the regulation or restriction and the

23   government interest put forward to justify it; (2) whether there are available alternative means of

24   exercising the right; (3) whether accommodation of the asserted religious right will have a

25   detrimental impact on prison guards, other inmates, or the allocation of limited prison resources;

26   and (4) whether there exist ready alternatives to the regulation or restriction.  See id.; see also

27   Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

28           Under RLUIPA, the government is required to ". . . meet the much stricter burden

1    of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling

2    government interest; and is the least restrictive means of furthering that compelling governmental

3    interest.'" Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C.

4    § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95.  Prison security is an

5    example of a compelling governmental interest.  See Green, 513 F.3d at 989 (citing Cutter, 125

6    S.Ct. at 2113 n.13).  In establishing that the regulation or restriction is the least restrictive means

7    to achieve a compelling governmental interest, prison officials must show that they actually

8    considered and rejected the efficacy of less restrictive means before adopting the challenged

9    practice.  See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

10           The gravamen of Plaintiff's complaint is that Defendants, in denying Kosher

11   meals, violated his rights under the First Amendment, RLUIPA, or both.  In the current motion to

12   dismiss, Defendants contend Plaintiff cannot sustain a First Amendment or RLUIPA claim

13   because any deprivation was de minimis and thus not a substantial burden on Plaintiff's exercise

14   of religion.  Next, Defendants assert that Petty, Pangelian, Marchal, and Cagnina should be

15   dismissed because they did not participate in the denial of Kosher meals.  Finally, in the context

16   of RLUIPA, Defendants argue that Plaintiff's sole remedy is prospective injunctive relief, which

17   was rendered moot when Plaintiff was provided Kosher meals after only a short delay.

18                        1.      Substantial Burden

19           At the outset, the Court rejects Defendants' apparent argument that Defendants

20   Herr and Lore should be dismissed because Plaintiff admits that Defendant Herr and Lore were

21   not the cause of his being denied Kosher meals.  In his first amended complaint, Plaintiff states

22   that the first time he was denied a meal it was by Defendant Herr, who did not find Plaintiff's

23   name on the IMTS list and refused him a Kosher meal, despite Plaintiff displaying his Religious

24   Diet Card.  See ECF No. 11, 5-6.  According to Plaintiff he was refused Kosher meals over the

25   next seventeen days by "Officers Herr, Lore, and John/Jane Does 1 thru 6." Id. at 7.  Broadly

26   construing Plaintiff's allegations, and taking the stated facts as true, Defendants Herr and Lore

27   affirmatively acted to deny Plaintiff Kosher meals for at least some of the seventeen days where

28   he missed meals.

1    The Court next addresses Defendants' argument that Plaintiff cannot state a claim

2    because the facts alleged show only a de minimis deprivation, which does not amount to a

3    substantial burden on Plaintiff's exercise of religion.  Defendants contend that the sixteen-day

4    interruption in Plaintiff's receipt of kosher meals is not a substantial burden on Plaintiff's

5    religious practice that rises to the level of a constitutional violation, citing Holiday v. Giusto,

6    2004 U.S. Dist. LEXIS 16348 (D. Or. 2004).  In that case, the plaintiff was denied Halal or

7    Kosher meals for eighteen days as the plaintiff waited for an application to receive Halal meals to

8    be processed.  See id. at *9.  The district court granted summary judgment in favor of the

9    defendants, stating that "an eighteen-day delay *in processing Plaintiff Holiday's religious dietary*

10   *request* simply is not a substantial burden."  Id. at *16 (emphasis added).

11   The instant case is distinguishable because Plaintiff had already been granted a

12   religious dietary request.  See ECF No. 11, 4.  Showing the sincerity of his religious beliefs,

13   Plaintiff was issued a card allowing him to receive Kosher meals.  See id. at 5.  He was then

14   denied Kosher meals for a period of seventeen days.  See id. at 7.  Rather than a delay "caused by

15   a verification process . . . recognized as a legitimate penological interest," as was the situation in

16   Holiday, Plaintiff was denied meals which he had already authorized.  Holiday, 2004 U.S. Dist.

17   16348 at *16.  It is unclear from the complaint whether Plaintiff was able to have alternative

18   meals during this time, though he does state that staff conduct was causing "starvation."  ECF No.

19   11, 11.

20   Defendants conceded that "[t]he point at which a temporary suspension of an

21   inmate's legitimate religious practice in prison becomes a substantial burden is a fact-based

22   inquiry and an open question."  ECF No. 20, 15 (quoting Lawson v. Carney, 2017 U.S. Dist.

23   LEXIS 160272, *18 (E.D. Wa. 2017)).  Based on this, it would be inappropriate to dismiss

24   Plaintiff's First Amendment and RLUIPA claims based on an assertion that a sixteen-day refusal

25   to serve him kosher meals is not a substantial burden on his religious practice.  The Court finds

26   that Plaintiff has stated sufficient facts to show that Defendants were responsible for at least

27   several days of not receiving kosher meals.  Given the fact-intensive nature of the inquiry, the

28   Court is not prepared to say that, on the facts alleged by Plaintiff, he has failed to allege a

1   substantial burden based on a sixteen-day delay.

2                    2.        Defendants Petty, Pangelian, Marchal, and Cagnina

3                    Defendants also assert that Plaintiff has failed to state a First Amendment claim

4   against Defendants Petty, Pangelian, Marchal, and Cagnina.  See ECF No. 20, 18-19.  According

5   to Defendants, Plaintiff has only made conclusory statements about their actions, and that as "no

6   specific activity in the deprivation is attributed to any of the above four defendants," that he fails

7   to state a claim.  Id. at 19.  The Court does not agree.  Plaintiff has alleged that these defendants

8   classified his grievance as a non-emergency, when it should have been an emergency, given that

9   he was missing meals, presenting a health risk.  See ECF No. 11, 8-10.  He claims that this further

10  delayed his receipt of appropriate meals.  See id. at 10.  The Court finds that these allegations are

11  sufficient to show the involvement of Defendant Petty, Pangelian, Marchal, and Cagnina in a

12  potential substantial burden by way of delay of Kosher meals.

13                   3.        Availability of Relief under RLUIPA

14                   Citing Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015), Defendants argue

15  that "RLUIPA does not authorize money damages against state officials, whether sued in their

16  official or individual capacities."  The Court agrees.  As discussed above, the Eleventh

17  Amendment bars any money damages claims against Defendants in their official capacities.  See

18  Eaglesmith, 73 F.3d at 859.  Moreover, RLUIPA does not permit money damages claims against

19  state officials acting in their individual capacities because Congress did not intend RLUIPA to

20  create individual liability.  See Jones, 791 F.3d at 1031.  Instead, RLUIPA allows for "appropriate

21  relief" against "a government."  Id.  Plaintiff cannot obtain money damages under RLUIPA and

22  any such claims should be dismissed with prejudice.

23                   Defendants also assert that any claim for injunctive relief under RLUIPA is now

24  moot because Plaintiff has begun to receive kosher meals again.  See ECF 20, 20.  "Federal courts

25  lack jurisdiction over claims that have been rendered moot because 'the issues presented are no

26  longer live' or because the parties no longer possess 'a legally cognizable interest in the

27  outcome.'"  Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015) (quoting Alvarez v. Hill, 667

28  F.3d 1061, 1064 (9th Cir. 2012)).  Even if the harm does not continue throughout the case, there

                                                   12

1   may still be standing where the challenged action is "one that is capable of repetition, yet evading

2   review." Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975). Courts have generally held that

3   inmate claims against prison officials become moot when they are release from custody, or are

4   transferred to a different facility, because at that point "there is no indication that [the plaintiff]

5   will again be subjected to the challenged prison policies." Alvarez, 667 F.3d at 1064. See, e.g.,

6   Jones, 791 F.3d at 1031, Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991), Incumaa v.

7   Ozmint, 507 F.3d 281, 285 (4th Cir. 2007); Cf. Lindquist v. Idaho State Bd. of Corr, 776 F.2d

8   851, 854 (9th Cir. 1985) (holding that construction of a new prison law library rendered a claim

9   for access to the courts partially moot because of physical changes to the prison facility).

10          Here, Plaintiff is still in custody at the same facility and therefore still subject to

11   the same policies. See ECF No. 11. There is no indication that any actions have been taken to

12   ensure no further deprivation of Kosher meals. The complaint, also states that "Plaintiff was still

13   periodically not being given his Kosher meals." Id. at 17. Because Plaintiff claims to still be

14   denied Kosher meals occasionally, and is still in the same prison facility, where no changes have

15   thus far been made to prevent future deprivations, his claim for injunctive relief under RLUIPA is

16   not moot.

17          **C.     Negligence Claims**

18          Defendants have asked this Court to take judicial notice of an exhibit which shows

19   that Plaintiff failed to comply with the California Government Claims Act by failing to wait for a

20   response to his complaint with the Government Claims Program (GCP) before filing this suit.

21   See ECF Nos. 20-1 (request for judicial notice, 20-2 (Exhibit A). The Court may take judicial

22   notice pursuant to Federal Rule of Evidence 201 of matters of public record. See U.S. v. 14.02

23   Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008). Thus, this Court may take judicial notice of

24   state court records, see Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir.

25   1964), as well as its own records, see Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967). This

26   Court may also take notice of "'records and reports of administrative bodies.'" Mack v. S. Bay

27   Beer Distribs., 798 F.2d 1279, 1282 (9th Cir. 1986) (quoting Interstate Nat. Gas Co., 209 F.2d

28   380, 385 (9th Cir. 1953)). The accuracy of the documents must not be "subject to reasonable

1     dispute." Fed. R. Evid. 201(b).

2              Defendants have attached a separate exhibit to their motion to dismiss, namely the

3     rejection of Plaintiff's claim by the GCP, dated June 26, 2020, along with certifications of the

4     document's veracity by both the GCP and the California Department of Justice.  See ECF No. 20-

5     2, 12-15.  This is an administrative record.  Given its source, its contents are not "subject to

6     reasonable dispute." Fed. R. Evid. 201(b).  Therefore, this Court may take notice of Defendants'

7     Exhibit A.

8              Defendants argue that, as shown by Exhibit A, Plaintiff violated the California

9     Government Claims Act because he filed this action prior to receiving a response from the state

10    agency responsible for hearing his claim.  See ECF No. 20, 23-24.  The Government Claims Act

11    requires that person submit their complaint to the appropriate governing body or public entity

12    before filing suit against the state and that a suit may not be filed until after that entity has acted

13    on or rejected the claim.  See Shirk v. Vista Unified Sch. Dist., 164 P.3d 630, 634 (Cal. 2007)

14    (overruled on other grounds by Rubenstein v. Doe No. 1, 400 P.3d 372 (Cal. 2017)); see also Cal.

15    Gov't Code § 945.4.  As Defendants' Exhibit A shows, Plaintiff did not receive a response to his

16    Government Claims Act claim until June 26, 2020 – which is after Plaintiff filed his original

17    complaint in this case on June 17, 2020.  See ECF No. 20-2, 12.  While Plaintiff's original

18    complaint was prematurely filed, the amended complaint upon which the action now proceeds

19    was filed after the Government Claims Act claim was denied.  Defendants have cited no authority

20    in support of the position that Plaintiff's negligence claim is procedurally barred on these facts

21    where it clear that, notwithstanding a premature filing, the state tort claim has since been denied

22    by the appropriate agency.

23             Finally, the Court rejects Defendants' contention that Plaintiff fails to plead

24    sufficient facts to sustain a claim for negligence.  As outlined above, Plaintiff alleges generally

25    that Defendants had a duty to provide Kosher meals consistent with this meal authorization.

26    Plaintiff also alleges that each defendant in some way participated in denying him Kosher meals

27    and that this caused him to suffer damage.  Liberally construed, these allegations are sufficient.

28    ///

14

1            **D.      Qualified Immunity**

2            Government officials enjoy qualified immunity from civil damages unless their

3    conduct violates "clearly established statutory or constitutional rights of which a reasonable

4    person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

5    qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

6    law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

7    immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

8    injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier

9    v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether

10   the right was clearly established. See id.  This inquiry "must be undertaken in light of the specific

11   context of the case, not as a broad general proposition . . . ." Id.  "[T]he right the official is

12   alleged to have violated must have been 'clearly established' in a more particularized, and hence

13   more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

14   official would understand that what he is doing violates that right." Id. at 202 (citation omitted).

15   Thus, the final step in the analysis is to determine whether a reasonable officer in similar

16   circumstances would have thought his conduct violated the alleged right. See id. at 205.

17           When identifying the right allegedly violated, the court must define the right more

18   narrowly than the constitutional provision guaranteeing the right, but more broadly than the

19   factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th

20   Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently

21   clear that a reasonable official would understand [that] what [the official] is doing violates the

22   right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court

23   concludes that a right was clearly established, an officer is not entitled to qualified immunity

24   because a reasonably competent public official is charged with knowing the law governing his

25   conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff

26   has alleged a violation of a clearly established right, the government official is entitled to

27   qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct

28   did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see

15

1    also Saucier, 533 U.S. at 205.

2            The first factors in the qualified immunity analysis involve purely legal questions.

3    See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal

4    determination based on a prior factual finding as to the reasonableness of the government

5    official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

6    has discretion to determine which of the Saucier factors to analyze first.  See Pearson v. Callahan,

7    555 U.S. 223, 236 (2009).  In resolving these issues, the Court must view the evidence in the light

8    most favorable to the plaintiff and resolve all material factual disputes in favor of the plaintiff.

9    See Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

10            Taking the facts alleged in the light most favorable to the Plaintiff, the amended

11    complaint establishes the violation of a clearly established right to religious meals.  Given the

12    existence of a Religious Meal Card, and established criteria for obtaining such card, a reasonable

13    official would know that there was a right to receive religiously compliant meals.  Finally, we

14    must determine whether the officials in question could have been reasonably mistaken in thinking

15    that their conduct did not violate the right.  The final inquiry – whether Defendants could have

16    reasonably but mistakenly believed their conduct did not violate Plaintiff's clearly established

17    rights – is a legal determination to be made based on prior factual findings, which cannot be made

18    in the context of a motion to dismiss.

19            Defendants Herr and Lore may or may not have been reasonably mistaken as to

20    whether their conduct violated Plaintiff's rights.  While they may have been reasonable in relying

21    on the "kitchen list," it is possible that failing to provide Plaintiff a meal in light of his Religious

22    Diet Card, which Plaintiff presented to them, was unreasonable, especially as Plaintiff returned

23    daily for over two weeks seeking a Kosher meal.  It is also possible that Defendants Herr and

24    Lore should have investigated the issue and sought to rectify it at some point given the seventeen-

25    day time frame during which the deprivations took place.  Taking Plaintiff's factual allegations as

26    true, Defendants Herr and Lore are entitled to qualified immunity.

27            According to Plaintiff, Defendant Alvarez deliberately misled Plaintiff by sending

28    him to medical for a meal in order to have Plaintiff withdraw his grievance.  See ECF No. 11, 15.

16

1    Given that Plaintiff is alleging intentional conduct intended to continue to deprive him of Kosher

2    meals, it can be inferred that Defendant Alvarez did not make a reasonable mistake about whether

3    or not his conduct was lawful.  Therefore, Defendant Alvarez is also not entitled to qualified

4    immunity at this stage.

5              Finally, regarding Defendants Petty, Pangelian, Marchal, and Cagnina, Defendants

6    contend that they were following state law in classifying Plaintiff's grievance as a non-emergency

7    grievance.  See ECF No. 20, 14-16.  Again, taking Plaintiff's allegations as true, Defendants'

8    reclassification of the grievance as a non-emergency appeal was inappropriate, as Plaintiff alleges

9    that he was undergoing "starvation," which Plaintiff contends was grounds to classify his

10   complaint as an emergency.  ECF No. 11, 10.  Whether these defendants appropriately followed

11   the process for the classification of grievances such that any mistake on their part was reasonable

12   is a factual question that cannot be decided at this time in the context of a motion to dismiss.  The

13   Court finds that Defendants Petty, Pangelian, Machal, and Cagnina are also not entitled to

14   qualified immunity on the current record.

15

16                                    **III.  CONCLUSION**

17             Based on the foregoing, the undersigned recommends that:

18             1.       Defendants' motion to dismiss, ECF No. 20, be granted in part and denied

19   in part.

20             2.       Plaintiff's damages claims against Defendants acting in their official

21   capacities be dismissed with prejudice.

22             3.       Plaintiff's damages claims under RLUIPA against Defendants acting in

23   their individual capacities be dismissed with prejudice.

24             4.       This action proceed against all Defendants on the following claims:

25                              (a) Plaintiff's damages claims under the First amendment against
                                Defendants in their individual capacities,
26

27                              (b) Plaintiff's injunctive relief claims under the First Amendment
                                and RLUIPA against Defendants acting in their official and
                                individual capacities, and
28

                                           17

1          (c) Plaintiff's negligence claims.

2

3          These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

4

after being served with these findings and recommendations, any party may file written

5

objections with the court.  Responses to objections shall be filed within 14 days after service of

6

objections.  Failure to file objections within the specified time may waive the right to appeal.  See

7

Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

8

9

Dated:  July 5, 2022

10

                                    DENNIS M. COTA
11                                  UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28