IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN E. RANSOM,<br><br>        Plaintiff,<br><br>    v.<br><br>HERR, et al.,<br><br>        Defendants. | No. 2:20-CV-1209-DJC-DMC-P<br><br>ORDER<br><br>and<br><br>FINDINGS AND RECOMMENDATIONS |

        Plaintiff, who is proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion to dismiss. See ECF No. 59. Plaintiff has not filed an opposition. For the reasons discussed below, the undersigned finds that Defendants' motion to dismiss should be granted.

        In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardusthis, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

1

1  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.
2  See Haines v. Kerner, 404 U.S. 519, 520 (1972).
3  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement
4  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair
5  notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly,
6  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order
7  to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain
8  more than "a formulaic recitation of the elements of a cause of action;" it must contain factual
9  allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56.  The
10 complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at
11 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the
12 court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
13 Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but
14 it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting
15 Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a
16 defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement
17 to relief." Id. (quoting Twombly, 550 U.S. at 557).
18 In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials
19 outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);
20 Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)
21 documents whose contents are alleged in or attached to the complaint and whose authenticity no
22 party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,
23 and upon which the complaint necessarily relies, but which are not attached to the complaint, see
24 Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials
25 of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.
26 1994).
27 ///
28 ///

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I.  BACKGROUND

**A.     Procedural History**

On February 2, 2021, the Court issued an order addressing the sufficiency of Plaintiff's original complaint and provided Plaintiff an opportunity to amend. See ECF No. 10. Plaintiff filed a first amended complaint on March 3, 2021. See ECF No. 11. The Court determined the first amended complaint was appropriate for service on all named defendants. See ECF No. 12. The Court summarized Plaintiff's allegations as follows:

> Plaintiff names the following as defendants: (1) Herr, a Correctional Officer at California State Prison – Solano (CSP-Sol.); (2) Lore, a Correctional Officer at CSP-Sol.; (3) G. Alvarez, the Assistant Food Manager at CSP-Sol.; (4) A. Petty; (5) C. Pangelian; (6) D. Marchal; and (7) C. Cagnina. See ECF No. 11, pgs. 1, 3.
> Plaintiff alleges he has been receiving Kosher meals consistent with his Jewish faith and pursuant to California prison regulations. See id. at 4. According to Plaintiff, participants in the Kosher meal program sign a "contract agreement" whereby inmates agree to only accept the provided Kosher meals and not the regular meals provided for prisoners not participating in the Kosher meal program. See id. Plaintiff states that "violators" of this agreement are subject to removal from the Kosher meal program "without any exceptions." Id. Plaintiff states that all participants in the Kosher meal program are issued a "Religious Diet Card" with their name and photograph on it for proof of participation. Id. at 5.
> Plaintiff states that participants in the Kosher meal program at CSP-Sol. Are required to pick up their breakfast and lunch by 5:30 a.m. and their dinner by 3:00 p.m. See id. According to Plaintiff, his work schedule, which runs Mondays through Thursdays, did not allow him to pick up his Kosher dinner by 3:00 p.m., so he was permitted to pick up his dinner during the "regular chow release" after 5:00 p.m. See id.
> Plaintiff alleges that, on February 12, 2020, at about 5:30 a.m., Plaintiff went to pick up his Kosher breakfast and lunch. See id. Plaintiff contends that the C-Facility dining room officer, Defendant Herr, refused to issue him his Kosher meals because Plaintiff's name was no longer on the "Inmate Meal Tracking System (IMTS) 'Kitchen List.'" Id. at 5-6. According to Plaintiff, he showed Defendant Herr his Religious Diet Card authorizing Kosher meals and asked Defendant Herr to re-check the list. See id. at 6. Plaintiff states that this request was "to no avail" and that Defendant Herr refused to feed Plaintiff breakfast or lunch. Id. Plaintiff states that he was "at a loss as to what to do" because the contract agreement for Kosher meals "made no exception or provision for such a

3

situation." Id. As a result, Plaintiff states he went without breakfast or lunch. See id.

According to Plaintiff, later that same day he went to the C-Facility dining room to pick up his Kosher dinner. See id. Plaintiff contends that an unidentified John Doe defendant refused to issue Plaintiff his Kosher dinner, stating that Plaintiff's name was no longer on his Kitchen List. Id. As with Defendant Herr, Plaintiff states he showed this unidentified John Doe defendant his Religious Diet Card but that he was nonetheless refused his Kosher dinner. See id. Again, Plaintiff states that he went without his evening meal, hoping the situation would eventually work itself out. See id. at 7.

Plaintiff claims that, with the exception of February 20, 2020, he was refused Kosher meals by Defendants Herr, Lore and unidentified John/Jane Does 1 through 6. See id. Each time, Plaintiff was informed his name was no longer on the Kitchen List. See id. According to Plaintiff, he showed his Religious Diet Card each time to no avail. See id. Despite showing his card, Plaintiff was refused his meals. See id. Plaintiff states that, on February 27, 2020, "it was revealed that Plaintiff's name had been on the IMTS Kitchen List all along." Id. at 7-8.

Plaintiff states that, on February 21, 2020, he submitted an emergency inmate appeal complaining that he had not been provided a total of 23 meals over the preceding nine days. See id. at 9. According to Plaintiff, Defendants Petty, Pangelian, Marchal, and Cagnina received and reviewed his appeal but refused to treat it as an emergency and instead set the matter for a hearing on April 7, 2020. See id. at 9-10. Plaintiff claims this action allowed for the protracted continuation of the denial of religious meals "and starvation." Id. at 10.

Plaintiff states that, on February 21, 2020, he submitted a staff misconduct complaint regarding the protracted denial of meals. See id. at 11. Plaintiff claims that, on February 24, 2020, Defendants Cagnina and unidentified John/Jane Does 7 through 9 "took it upon themselves to deliberately and nefariously mis-categorize Plaintiff's 'Staff Misconduct Complaint' as a Category 9 'Living Condition Complaint.'" Id. at 12-13. Plaintiff alleges this was done in order to "foster a code of silence" and circumvent Plaintiff's rights to a separate staff misconduct investigation under California prison regulations. See id. at 13.

Plaintiff contends that, on February 26, 2020, he went to the C-Facility dining hall for his daily Kosher breakfast and lunch. See id. at 13-14. Upon arrival, the Assistant Correctional Food Manager, Defendant Alvarez, was waiting to interview Plaintiff regarding his pending inmate grievances alleging that prison officials were withholding his Kosher meals. See id. at 14. According to Plaintiff, Defendant Alvarez told Plaintiff she had reviewed Plaintiff's appeal issues and found that Plaintiff had not been receiving his Kosher meals because medical staff had placed Plaintiff on a new "renal diet" which overrode his Kosher diet. Id. Alvarez told Plaintiff he should have been receiving his meals from the medical facility for the last 16 to 17 days. See id. Plaintiff states he was told by Alvarez that she had done all she could, and that Plaintiff should withdraw his grievances and submit a medical grievance against the "Medical Dietician." Id. Plaintiff states he told Alvarez he would not withdraw his appeals. See id. at 15.

According to Plaintiff, this was all a ruse as he went to the medical facility to request meals and was told by Correctional Officer McCullen that she had no recollection of Plaintiff ever being placed on a "renal diet." Id. According to Plaintiff, McCullen called the dietician to

4

confirm and was told by the dietician that there is not nor has there ever been an order for Plaintiff to receive a "renal diet." Id. at 15-16.

Plaintiff states that he ultimately went without meals that day because he had to report for his work assignment. See id. at 16. According to Plaintiff, later that evening he went to the C-Facility dining hall and presented his diet card to receive his Kosher dinner. See id. Plaintiff states that, once again, he was refused his meal by an unidentified John/Jane Doe defendant, who told him that his name was not on the Kitchen List. See id.

Plaintiff contends that he went to the dining hall on February 27, 2020, at 5:30 a.m. to receive his Kosher breakfast and lunch. See id. Plaintiff states that, once again, Defendant Alvarez was waiting and told Plaintiff that she had mistaken Plaintiff for another prisoner who had been removed from the Kosher meal program and placed on a renal diet. See id. According to Plaintiff, he was told by Alvarez this time that the reason Plaintiff's name had not been showing up on the IMST Kitchen List for the last 17 days was because Plaintiff name had been moved from page 2 to page 1 of the Kitchen List and that the kitchen cook had only been providing custody staff with page 2 of the Kitchen List. See id. at 17.

ECF No. 12, pgs. 1-3.

First Motion to Dismiss

Defendants waived service and filed a motion to dismiss the first amended complaint on December 17, 2021. See ECF No. 20. On April 20, 2023, the District Judge issued an order resolving Defendants' motion to dismiss. See ECF No. 35. The District Judge ordered as follows:

> [1].    Defendant's Motion to Dismiss (ECF No. 20) is granted in part and denied in part;
>
> [2].    Plaintiff's damages claims against Defendants acting in their official capacities are dismissed with prejudice;
>
> [3].    Plaintiff's damages claims under RLUIPA [Religious Land Use and Institutionalized Persons Act] against Defendants acting in their individual capacities are dismissed with prejudice;
>
> [4].    This action proceed against all Defendants except Defendant Alvarez on the following claims:
>
>    a. Plaintiff's damages claims under the First Amendment against defendants in their individual capacities,
>
>    b. Plaintiff's injunctive relief claims under the First Amendment and RLUIPA against Defendants acting in their official and individual capacities, and
>
>    c. Plaintiff's negligence claims.

///

5

          [5].   Plaintiff's claims against Defendant Alvarez are dismissed with leave to amend. Within thirty days of this order, Plaintiff is directed to file a Notice of How to Proceed informing the court of whether he wishes to proceed on his remaining claims and defendants or if he wishes to be granted leave to file a Second Amended Complaint.

ECF No. 35, pg. 6.

After informing the Court of his intention to file a second amended complaint, Plaintiff filed his second amended complaint on June 30, 2023. See ECF No. 41.

Motion to Revoke Plaintiff's In Forma Pauperis Status

Defendants responded to the second amended complaint by way of a motion to revoke Plaintiff's in forma pauperis (IFP) status. See ECF No. 43. On March 8, 2024, the District Judge issued an order granting Defendant's motion and directing Plaintiff to pay the full filing fees for this case within 21 days. See ECF No. 45. Plaintiff paid fees on May 7, 2024.[1]

Second Motion to Dismiss

Defendants filed the pending motion to dismiss Plaintiff's second amended complaint on May 28, 2024. See ECF No. 59. The proof of service accompanying Defendants' motion indicates that it was served on Plaintiff at his address of record in Los Angeles, California. See id. at 19. On July 25, 2024, the Court issued a minute order vacating the hearing scheduled for Defendants' motion to dismiss and submitting the matter on the papers for decision without oral arguments. See ECF No. 62. The minute order was also served on Plaintiff at his address of record. See unenumerated docket entry following ECF No. 62 indicating service of process. To date, mail directed to Plaintiff at his address of record has not been returned unserved, and

---

[1] While Defendants' motion to revoke Plaintiff's IFP status was pending and before it was resolved by the District Judge, Plaintiff filed a notice of change of address indicating his release from prison and relocation to a private residence in Los Angeles, California. See ECF No. 53. The docket reflects that Plaintiff has received the Court's order since his change of address as demonstrated by compliance with the District Judge's order to pay fees.

Also during the time Defendants' motion to revoke Plaintiff's IFP status was pending, Plaintiff filed a motion for leave to amend along with a proposed third amended complaint. See ECF Nos. 46 and 47. In the context of findings and recommendations to the District Judge regarding Defendants' motion to revoke Plaintiff's IFP status, the undersigned ordered that Plaintiff's motion to amend be denied without prejudice to renewal following the District Judge's final order on Defendants' motion to revoke. See ECF No. 54 (order and findings and recommendations). To date, Plaintiff has not renewed his motion for leave to amend. The third amended complaint at ECF No. 47 is not before the Court. This case proceeds on the second amended complaint. The Court will order the third amended complaint at ECF No. 47 be stricken.

Plaintiff has not filed any opposition to Defendants' motion to dismiss the second amended complaint.

### B. <u>**Plaintiff's Allegations**</u>

This action currently proceeds on Plaintiff's second amended complaint, which was filed after the District Judge's order providing an opportunity to amend to include additional allegations as to his claims against Defendant Alvarez. <u>See</u> ECF No. 41. Plaintiff's allegations are the same as those outlined in the first amended complaint with the notable exception that the second amended complaint omits certain facts concerning Defendant Alvarez which were alleged in the first amended complaint. <u>Compare</u> ECF Nos. 11 and 41.

Defendants submit the following statement regarding Plaintiff's current allegations as to Defendant Alvarez, which the Court accepts given that Defendants' motion is unopposed:

> Plaintiff submitted an "emergency…602" inmate grievance on February 21, 2020, about his lack of kosher meals. ([ECF No. 41] at ¶ 31.) On February 24, 2020, Defendants Petty, Pangelian, Marchal, and Cagnina "received and reviewed the emergency…602…but refused to process it as an emergency," setting a hearing date in April. (*Id.* at ¶ 32.) Plaintiff admits that on February 26, 2020, Defendant Alvarez was assigned to interview him and investigate his grievance. (*Id.* at ¶¶ 45-46.)
> On February 26, 2020, Plaintiff went to the dining room at 5:30 a.m. to receive his breakfast and lunch and was met by Defendant Alvarez who was "waiting to interview" Plaintiff about the filed grievance and investigate the issue he had raised. (*Id.*) Alvarez initially informed Plaintiff that "through her investigation" she had learned that medical staff had placed Plaintiff on a renal diet "which over-road [sic] his Kosher meals" and that he "should have been picking up his meals at the CTC medical facility for the last 16 to 17 days." (*Id.* at ¶ 46.) Plaintiff went to the medical facility and was told he was not ordered to receive a renal diet. (*Id.* at ¶ 52.) Plaintiff alleged he was not provided kosher meals that day. (*Id.* at 54.) The next day, February 27, 2020, Plaintiff asserts that "it was revealed that Plaintiff's name had been on the IMTS kitchen list all along. (*See* Claim No. 4) [this is the claim against Defendant Alvarez]. (*Id.* at ¶ 28.)
> In his Second Amended Complaint, Plaintiff did not add any additional factual allegations about Defendant Alvarez that are not found in the First Amended Complaint. (*Compare* ECF No. 11 to ECF No. 41.) Instead, Plaintiff omitted several facts about her. In the First Amended Complaint, Plaintiff admits that on February 27, 2020, Defendant Alvarez told Plaintiff that "yesterday she had mistaken Plaintiff as another prisoner who had been removed from the kosher meal program and placed on a renal diet." And that "Defendant Alvarez further stated that the reason Plaintiff's name had not been showing up on the IMST Kitchen list for the last 17 days is that Plaintiff's name had been moved from page 2 to page one (1) of the IMST Kitchen list and that Correctional Cook John Doe 10 was only providing custody staff page 2 of the IMST kitchen list." (ECF

No. 11 at ¶¶ 58-59.) But in the Second Amended Complaint, the allegations found in the First Amended Complaint at paragraphs 58 and 59 are omitted. Instead, Plaintiff only states that the reason why he was not receiving kosher meals, that a page of the list delivered to the kitchen was missing, was "revealed" to him (ECF No. 41 at ¶ 28), without stating who revealed this information to him. But Plaintiff has previously admitted this information was delivered to him by Defendant Alvarez as a result of her continued investigation into the matter. (ECF No. 11 at ¶ 59.)

ECF No. 59, pgs. 10-11.

## II.  DISCUSSION

In the pending unopposed motion to dismiss, Defendants argue that, despite having been advised of the pleading defects as to Plaintiff's claims against Defendant Alvarez by the District Judge and having been provided leave to amend, the second amended complaint continues to plead insufficient facts to state a plausible claim for relief.  See ECF No. 59. Defendants also argue that Plaintiff's claims for injunctive relief have been rendered moot by Plaintiff's release from prison.[2]  See id.

### A.    Claims Against Defendant Alvarez

The question now before the Court is whether the second amended complaint pleads sufficient additional facts to cure the defects as to Defendant Alvarez identified in the District Judge's order resolving Defendants' first motion to dismiss.  The undersigned's analysis, therefore, begins with the District Judge's April 20, 2023, order.  Regarding Defendant Alvarez, the District Judge stated:

> . . . Regarding Defendant Alvarez, the Court agrees that Plaintiff has not alleged any facts that would link Defendant Alvarez's actions with the alleged constitutional violations in this case. Under Federal Rule of Civil Procedure 8(a)(2), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). That requirement is not met here. According to the Plaintiff, while Defendant Alvarez erroneously

---

[2]    Defendants raise no arguments concerning Plaintiff's damages claims under the First Amendment against Defendants acting in their individual capacities or Plaintiff's negligence claims, which were deemed sufficient to proceed by the District Judge and which have been realleged in the operative second amended complaint.

8

informed Plaintiff that he was supposed to be on a renal diet, she corrected her mistake the next day and informed Plaintiff that in fact he had been mistakenly left off the kitchen list, an error she appears to have fixed. (First Am. Compl. (ECF No. 11), ¶¶ 44-59.) Given that Defendant Alvarez quickly corrected her error, the Court cannot reasonably infer that the intent of Defendant Alvarez was to attempt to "throw Plaintiff off the trail and falsely accuse medical staff." *Id*. at ¶ 51. Absent additional allegations, there is no plausible theory by which Defendant Alvarez's mistake was not reasonable and is thus protected by qualified immunity. *Lacey v. Maricopa Cnty.* 693 F.3d 896, 915 (9th Cir. 2012) ("Under qualified immunity, an officer is protected from suit when he makes a reasonable mistake of law or fact."). The Court will grant Plaintiff leave to amend as Defendant Alvarez.

ECF No. 35, pg. 2.

Plaintiff's second amended complaint fails to satisfy the District Judge's order. Specifically, Plaintiff has not added any new allegations to suggest that Defendant Alvarez' conduct was unreasonable and, therefore, not subject to qualified immunity. To the contrary, Plaintiff has omitted certain allegations apparently to make Defendant Alvarez' involvement somewhat murkier. In doing so, the second amended complaint moves even further from the realm of plausibility required under Rule 8. The undersigned answers the question before the Court in the negative and finds that Plaintiff continues to fail to plead sufficient facts to show that Defendant Alvarez' conduct was unreasonable.

**B.      Claims for Injunctive Relief**

The District Judge concluded that Plaintiff's claims for injunctive relief, under both the First Amendment and RLUIPA, are sufficient to proceed. See ECF No. 35. These claims have been realleged in the second amended complaint. See ECF No. 41.

At the time the District Judge issued this ruling in April 2023, Plaintiff was in custody. Plaintiff filed his second amended complaint in June 2023. See id. In October 2023, Plaintiff filed a notice of change of address indicating that he had been released from prison and was living at a private address in Los Angeles. See ECF No. 53. Defendants now argue that Plaintiff's claims for injunctive relief have been rendered moot by his release. See ECF No. 59, pg. 17.

/ / /

/ / /

1           The Court agrees.  As Defendants note, an inmate's release from prison while

2 claims for injunctive relief concerning conditions of confinement are pending will render such

3 claims moot.  See Alvarez v. Hill, 667 F.3d 1061, 1064 (9th Cir. 2012); Dilley v. Gunn, 64

4 F.3d 1365, 1368 (9th Cir. 1995); see also Sams v. Lundy, 2023 WL 9058354, at *5 (E.D. Cal.

5 2023).

6

7                                        **III.  CONCLUSION**

8           Based on the foregoing, the undersigned orders and recommends as follows:

9           1.       It is ORDERED that Plaintiff's third amended complaint, ECF No. 47, is

10 stricken as having been improperly filed without stipulation or leave of court.

11           2.       It is RECOMMENDED that Defendants' motion to dismiss, ECF No. 59,

12 be granted.

13           3.       It is RECOMMENDED that Plaintiff's claims against Defendant Alvarez

14 be dismissed with prejudice.

15           4.       It is RECOMMENDED that Plaintiff's claims for injunctive relief be

16 dismissed as moot.

17           5.       It is RECOMMENDED that Defendants Marchal, Cagnina, Petty, Lor,

18 Herr, and Pangelian be ordered to file an answer to Plaintiff's second amended complaint on

19 Plaintiff's damages claims under the First Amendment against Defendants acting in their

20 individual capacities and Plaintiff's negligence claims.

21           These findings and recommendations are submitted to the United States District

22 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

23 after being served with these findings and recommendations, any party may file written objections

24 with the Court.  Responses to objections shall be filed within 14 days after service of objections.

25 / / /

26 / / /

27 / / /

28 / / /

1  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.
2  Ylst, 951 F.2d 1153 (9th Cir. 1991).

4  Dated:  March 4, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

11